## WISONG v. VAN AUKEN.
No. 1979.

Court of Civil Appeals of Texas. Beaumont.
June 23, 1930.

Rehearing Denied July 7, 1930.

Kitching & Kenna, of Beaumont, and Jos. A. Wisong, of Liberty, for plaintiff in error.

D. E. O'Fiel, of Beaumont, for defendant in error.

O'QUINN, J.

M. A. Van Auken was plaintiff in the court below. She sued plaintiff in error to recover the balance due on a promissory note executed by plaintiff in error on June 1, 1925, for the sum of $1,103, payable to her order, said note bearing interest at the rate of 8 per cent. per annum, and providing for 10 per cent. attorneys' fees if collected by suit. There was a credit of $200 on the note. The note recited that it was given for money borrowed from defendant in error, and that to secure the payment of said note, plaintiff in error had executed a certain deed of trust on certain described lands situated in Orange county, Tex. Her prayer was for judgment for her debt, interest, attorneys' fees and costs of suit, and relief generally.

Defendant in error, Wisong, defendant below, answered by general demurrer, admitted the execution of the note, but denied any liability thereon, alleging that same had been fully paid long prior to the filing of the suit. He also admitted the execution of a deed of trust on certain lands in Orange county, Tex., to secure the payment of said note, and alleged that at the same time he gave deeds of trust on the same property to the law firm of Howth, Adams & Hart, to John T. Kitching and David E. O'Fiel to secure the payment of money he owed them. He further alleged that plaintiff, M. A. Van Auken, foreclosed her deed of trust on said property when her note became due and purchased said property at the trustee's sale; that thereafter the said M. A. Van Auken, and said Howth, Adams & Hart, John T. Kitching, and David E. O'Fiel demanded of plaintiff in error, Wisong, that an absolute assignment of all his interest in and to said property be made by him to said parties, and that he did make and deliver to said parties an assignment of all his interest in same, which was accepted by all of said parties in full payment and satisfaction of the amount due to each of them, respectively, by reason of which said note here in question had been fully paid and discharged. His prayer was that said note be canceled, and in the alternative that the property upon which he had given the deeds of trust was of value in excess of the debt and asked for judgment against defendant in error in the sum of $2,-000, in the event said note was not canceled.

To the defensive matters set forth in Wisong's answer, defendant in error answered by general demurrer, general denial, and specially that, at the time of the said assignment pleaded by plaintiff in error, he had no interest in or to said property for in that all the interest or claim he had in or to said property had been fully divested out of him by conveyances executed by him to others, and particularly by the sale under the deed of trust executed to defendant in error when and where the said property was sold to, and bought in by, defendant in error, by reason of which he had no interest in said property to assign to any one; that said assignment was without consideration and of no force; that by said assignment no right passed from plaintiff in error to defendant in error, nor any from defendant in error to plaintiff in error; that when defendant in error foreclosed her deed of trust on said property same was done strictly in compliance with the terms of said deed of trust, and accordingly all the interest in said property then owned or held by plaintiff in error was sold at said deed of trust sale and for a fair price, leaving a balance due defendant in error on said note of the amount sued for. In answer to plaintiff in error's said pleading, she attached an exhibit to her pleading showing she had received as revenues from said property the sum of $108.45. Later defendant in error filed an amended pleading wherein she alleged as before, and prayed as before, and asked in the alternative, for judgment for her debt and foreclosure of her lien.

In answer to this amended petition plaintiff in error filed his amended answer setting up all the matters as in his original answer, and further alleged that after defendant in error had foreclosed her deed of trust on said property a dispute arose between defendant in error, M. A. Van Auken, and said Howth, Adams & Hart, John T. Kitching and David E. O'Fiel, to whom plaintiff in error had executed deeds of trust on said property, as to their respective rights and the interest each of said parties had in and to said property, and that all of said parties agreed as a settlement of said dispute that plaintiff in error would execute an absolute assignment of all his interest in and to said property to the said parties in the proportion of one-half to Howth, Adams & Hart, one-third to defendant in error, M. A. Van Auken, and one-sixth to David E. O'Fiel, said assignment would be accepted by said parties as a novation of all their prior agreements and waive all their interests and rights theretofore acquired by them under the deeds of trust, and promised to give to plaintiff in error, if he executed said assignment, and at the time of his executing same, a letter to the effect that said

assignment, though absolute on its face, was intended as a mortgage to secure the payment of the amount of money due by plaintiff in error to each of said parties, but that defendant in error, M. A. Van Auken, refused to give such letter and demanded payment in full of all her demands by a certain date, which plaintiff in error was not able to make, whereupon defendant in error appropriated said property to her own use and benefit and collected rents and revenues from same and refused to account to plaintiff in error for same, thereby releasing him from any indebtedness he might have owed her.

Defendant in error replied to this amended pleading on the part of plaintiff in error by general demurrer, general denial, and special pleas not necessary to mention.

The case was tried to the court without a jury and judgment was rendered for defendant in error in the sum of $1,213.30, less a credit of $200, with interest thereon at the rate of 8 per cent. per annum until paid, and refused plaintiff in error judgment on his cross-action. The case is before us on plaintiff in error's appeal by writ of error.

At the request of plaintiff in error, the court made and filed his findings of fact and conclusions of law. They are:

"Conclusions of Fact and Law.

"1. I find that on June 3rd, 1925, J. A. Wisong executed to M. A. Van Auken, a feme sole, his promissory note due in one year from said date, in the sum of Eleven Hundred and three ($1,103.00) Dollars, payable at Beaumont, Texas, and that coincident with its execution he also executed and delivered a deed of trust in favor of M. A. Van Auken, covering interest in certain lands described in the pleadings, situated in Orange County, Texas, to secure its payment, with C. H. Stroeck as trustee; that said note matured June 3rd, 1926, and the said J. A. Wisong failed to pay same, that M. A. Van Auken, the owner of said note, demanded an enforcement of the terms of the said deed of trust; that C. H. Stroeck, the original trustee, resigned, and A. S. Reagan was duly appointed substitute trustee, and made sale of said interest in said lands under foreclosure, at which time same was sold for a price of Two Hundred ($200.00) Dollars, which was duly credited on said note.

"I find that the amount due on said note is the principal, Eleven Hundred and Three ($1103.00) Dollars, ten (10%) percent additional on the principal and interest as attorney's fees, and eight (8%) percent on same from June 3rd, 1925, subject to a credit of Two Hundred ($200.00) Dollars made July 6th, 1926; that M. A. Van Auken is the owner of said note and entitled to demand and receive collection of the amounts due.

"I find that the transaction referred to in defendant's pleadings, was not intended as a mortgage or conditional sale of the property described and referred to in defendant's pleadings.

"I find that at one or two times, as shown by the evidence, at defendant J. A. Wisong's request, the plaintiff agreed that he might repurchase the lands by paying as a consideration therefor the full amount of the principal and interest due on the same;

"I find that no consideration however passed from the defendant, J. A. Wisong, to the plaintiff, M. A. Van Auken, for the making of said promise, and find that the said J. A. Wisong failed to carry out his agreement, and find that he failed to tender the said purchase price and demanded any deed of the said plaintiff.

"Conclusions of Law.

"From the above and foregoing I conclude that the plaintiff is entitled to recover the balance due on the note sued upon, principal, interest and attorneys' fees, less the credit referred to.

"I find that the defendant has interposed no equitable reason to this court intitling him to any relief sought in his pleadings, and find that he has not offered to do equity, and render judgment for plaintiff in accordance with the pleadings on file.

"Geo. C. O'Brien, Judge Presiding."

Plaintiff in error's first two propositions practically raise the same question, and that is that the instrument referred to as an "absolute assignment," executed by plaintiff in error, in which he assigns all his interest in and to the lands upon which he had executed deeds of trust to defendant in error and others to secure the payment of notes given by him to defendant in error and the other parties for borrowed money, was, in effect, a conditional sale executed by him to secure the defendant in error against the loss of her debt evidenced by the note sued on, and plaintiff in error having failed to fulfill the condition upon which he had the right to repurchase said property, the retention of the property by defendant in error under the assignment was a satisfaction of the debt.

These assignments are overruled. The history of the execution of the note sued on by plaintiff in error is briefly shown by the following agreement of the parties, found in the record:

"It was agreed by the parties that prior to the date of the execution of the note and deed of trust herein sued upon, the plaintiff and defendant and other parties, consisting of Howth, Adams & Hart, Guy W. Junker, and David E. O'Fiel, were acting together in a joint enterprise in the prosecution of certain land claims, and prior to said date plaintiff herein, as well as other parties above named, had advanced to the defendant J.

A. Wisong certain sums of money which were to be charged against his interest in the fees realized from said matters; that on and prior to June 1st, 1925, this relation was severed but no accounting or adjustment had been made. That on June 1st, 1925, and just prior to the execution of the note and deed of trust above described, an accounting and adjustment was made, and to settle the matter of the advances made to him the said Wisong executed the note sued upon, payable in one year; and to secure its payment gave a deed of trust lien on the lands therein described, which on and immediately before June 1st, 1925, had been ascertained were his due and which had been set apart to him by written assignment.

"It was further agreed that at the same time the note and deed of trust herein sued on were given to the plaintiff the defendant also gave notes and deeds of trust to said Howth, Adams & Hart, and John T. Kitching and to David E. O'Fiel to secure so much of the advancement that was due from this defendant to them on account of the same matters, which deeds of trust covered the same property described in the deed of trust herein sued upon and also other properties in Orange County and Liberty County. That on June 1st, 1926, the due date of the note sued on, the said defendant failed to pay said note; that C. H. Stroeck, the original trustee named, refused and declined to act; that the plaintiff designated Albert S. Reagan as substitute trustee, and that thereafter the property was duly advertised for sale at the July, 1926, sales day under execution in Orange County, Texas, and duly sold, at which time the property was purchased and bought in by the plaintiff for the sum of Two Hundred ($200.00) Dollars, the substitute trustee executing a deed to plaintiff and entering a credit on said note of Two Hundred ($200.00) Dollars. That the other deeds of trust hereinabove referred to as given to Howth, Adams & Hart, and John T. Kitching were not foreclosed. The deed of trust in favor of David E. O'Fiel was foreclosed at the same time and by the same method. That the note and deed of trust given Howth, Adams & Hart and John T. Kitching matured June 1st, 1926."

It appears that after defendant in error had foreclosed her deed of trust and had bought in the land at the trustee sale, there arose some question as to the rights of the different parties to whom plaintiff in error had given deeds of trust upon the said land to secure his said notes. In an effort to adjust this matter, the instrument in question was executed. It reads:

"The State of Texas, County of Jefferson:

"Know all men by these presents: That I, J. A. Wisong, a resident of the above county and state, for and in consideration of Ten ($10.00) Dollars, cash in hand paid by each of the grantees herein, receipt of which is hereby acknowledged, and other valuable considerations, do hereby convey, transfer, assign and set over unto the law firm of Howth, Adams & Hart, composed of C. W. Howth, M. G. Adams, Lamar Hart and John T. Kitching; M. A. Van Auken and David E. O'Fiel, all residents of the above county and state, in the respective proportional interests as hereinafter set forth, all my right, title and interest in and to all land and mineral rights situated in the northeast quarter of the Wm. Dyson League, Orange County, Texas, only insofar as acquired and to be acquired by me by virtue of powers of attorney granted me by the heirs of Moise LeBleu and Clairville Granger and as a result of that certain suit entitled Samuel E. Duhon, et al. v. Aladin Michel, et al, No. D. L. 705, on the docket of the United States District Court, Eastern District of Texas at Beaumont, Texas, and as a result of all the compromise judgments growing out of said suit severed therefrom and entered in separate causes; and also all my right, title and interest in and to any and all land and mineral rights situated in the Bradley Garner Survey, Orange County, Texas, only insofar as acquired and to be acquired by me by virtue of powers of attorney from the heirs of A. J. Black, duly recorded in records of Orange County, Texas, and acquired as a result of that certain suit entitled Florence Black Lyons et al vs. Sun Oil Company, et al, No. 754, A–E, on the docket of the United States District Court, Eastern District of Texas, at Beaumont, Texas, and of the several compromise judgments growing out of said suit, severed and entered.

"To have and to hold the said right, title and interest, unto said respective grantees, their heirs and assigns forever, in the following respective proportions, to-wit:

"To Howth, Adams & Hart and John T. Kitching, an undivided one-half interest;

"To M. A. Van Auken an undivided one-third interest;

"To David E. O'Fiel an undivided one-sixth interest.

"We, the grantees above named, do hereby expressly ratify, confirm and approve the partition among us of the said grantor's interest, and acknowledge the respective existing rights of one another to be as stipulated in the foregoing instrument; hereby waiving, as among ourselves, whatever right, title and interest we may have heretofore had under and by virtue of any and all deeds of trust heretofore executed by grantor in our favor.

"In witness whereof we hereunto set our hands at Beaumont, Texas, on this the 3rd day of August, 1926.

"Jos. A. Wisong
"M. G. Adams
"John T. Kitching
"Lamar Hart
"M. A. Van Auken
"David E. O'Fiel
"C. W. Howth."

This instrument was duly acknowledged by all the parties thereto.

Although defendant in error had regularly foreclosed her deed of trust on the land, and had bought in the land at the trustee's sale, and had taken deed thereto, still the other parties, Howth, Adams & Hart, John T. Kitching, and David E. O'Fiel had deeds of trust given by plaintiff in error to them on the same lands and were insisting that they were holders of an interest in said lands, and to settle among themselves this contention, they agreed to partition among themselves whatever interest plaintiff in error had in and to said land, and as among themselves, to waive whatever right, title, or interest they may have had under and by virtue of said deeds of trust, and to acknowledge the respective existing rights of each other, by plaintiff in error executing and they accepting the assignment above set forth. It is manifest that this method of settling the dispute of the different deed of trust holders was to maintain amity among themselves, and to save costs of further contests of the other deeds of trust holders in an endeavor to enforce their rights. The assignment recites that *this waiver was among themselves*. It is also manifest, we think, that plaintiff in error joined in the matter for the same purpose. This was not a reinvestment in plaintiff in error of the title he held before defendant in error foreclosed her trust deed, nor a recognition of title in plaintiff in error. *It was only a method by which the grantees adjusted their own claims.*

But appellant says that the assignment, though absolute on its face, was, in fact, but a conditional sale, and that it was understood at the time of its execution that it was given as security for the debts for which the original deeds of trust were given, and that upon plaintiff in error's paying said debts, then the parties grantees were to reconvey to him the said property. This, he says, was an oral agreement, but that said parties, grantees, were to give him a letter or instrument in writing to that effect. In so far as defendant in error, M. A. Van Auken, is concerned, the record does not support this contention. Not only does she deny that she, or any one authorized to act for her, ever made any such agreement with plaintiff in error, or with any one acting for him, but there is in the record two letters written by her agent and attorney in fact, Thos. A. Van Auken, to plaintiff in error which show the contrary. The first of these letters was written August 3, 1926, the day the assignment was executed. It reads:

"August 3rd, 1926.

"Joseph A. Wisong, Beaumont, Texas

"Dear Sir: Referring to the assignment executed by you to me and others August 2rd, 1926, of royalty interest in the Wm. Dyson League, beg to say it is agreeable with me to sell this interest back to you at any time during the time I own this said interest for just exactly the money I am out in this transaction. I shall keep account of the money accruing from royalty and will deduct such amount from the total amount required to deed same interest to you. However, nothing in the letter shall be construed that I am obliged to hold this interest at all, for I want my money out of this transaction as soon as I can get it. But at any time before I should sell this interest in question should you find a purchaser or reimburse me for the money I am out on this transaction, I shall make an assignment to you in preference to anyone else. In other words all I want is my money that I am out in this transaction as soon as I can get it.

"Very truly,

"M. A. Van Auken

"By T. A. Van Auken."

The second letter was dated September 8, 1926, and reads:

"September 8, 1926 Beaumont, Texas

"Joseph A. Wisong, Esq., Beaumont, Texas

"Dear Sir:—The judgment was entered in the Duhon case September 7th, 1926. If you wish to buy or can find a buyer for the interest I acquired from you in the Black case and in the Duhon case at any time before December 15th, 1926, I will take ($1103.00) Eleven Hundred and Three Dollars net cash or part cash and a negotiable note for all or part. If this offer is not lenient enough please outline what you would want.

"Yours, T. A. Van Auken."

These letters make it clear, we think, that defendant in error regarded the assignment as absolute, and never intended as security for debt. The record reflects that the attitude of Wisong and Thos. A. Van Auken, the father of and agent and attorney in fact for and acting for his daughter, M. A. Van Auken, defendant in error, was not friendly. In fact they did not discuss matters with each other. M. G. Adams, of the firm of Howth, Adams & Hart, conducted the negotiations between them. As to the contention of plaintiff in error as to the extent and purpose of the assignment in question, he testified: "As to the circumstances leading up to the execution of that assignment, I will say that in the first place Mr. Wisong owed us some money for expenses and money advanced. He owed the firm of Howth, Adams, O'Fiel & Hart, and he owed Mr. Van Auken money, and the only manner in which he could secure us in the payment of that money at that time, as we understood it, was from the interests that we had worked out in some oil or land settlements, and he proposed to secure us for these the best he could. Prior to that time he had given us a mortgage, I believe, and maybe Mr. O'Fiel and Mr. Van Auken both had mort-

gages under deeds of trusts, I believe in Orange County. I think Mr. O'Fiel and Mr. Van Auken had foreclosed under the deed of trust for theirs. We had not done so. We just left it. We didn't know anything about their foreclosing, however, and there arose a controversy as to the different interests that all of us might have in these properties under these mortgages, under these deeds of trust. After the foreclosure under the deed of trust by Mr. Van Auken and Mr. O'Fiel, the suggestion was made that we all get together and divide and allot the different amounts he owed our firm and what he owed Van Auken and what he owed O'Fiel. We didn't undertake to determine it very accurately but we just got together and agreed on the amount and we agreed then that he should convey these properties, I believe one-half to our firm, Howth, Adams & Hart, to protect us for the amount of money he owed us, about Thirty Five Hundred ($3500.00) Dollars at that time; and a certain amount worth one-half to Van Auken and a part to Mr. O'Fiel under this agreement as stated. This settled all the matters as between us. That is, I don't mean settled the indebtedness. I mean settled any controversy that might have arisen, up to that time there hadn't been any litigation about it or any real contention, hadn't really been discussed much, but we just got together in a friendly way and divided it up in that manner."

He further testified: "There was no argument made about the deed of trust sales or any attack that was made on their validity and no argument that the sale was not regular or valid and that they were giving him the balance due on the note and were going to hold this as a mortgage. Of course, Mr. Van Auken and I discussed that matter as between you, O'Fiel, and him and our firm as to what our interests were. The real purpose of this agreement that I was called on to identify awhile ago was to settle the differences between our firm, Mr. Van Auken and you (O'Fiel) as to our rights in the property. That was the real purpose of it. Incidentally we had Wisong to convey to our firm this property to hold in that way. That was the idea and purpose of it. I was not trying to adjust or settle any difference between Miss Van Auken and Wisong about the debt or any balance due on the note or anything of that kind, or to adjust any controversy that arose about the deed of trust sale that had been made prior to that. The real purpose of that was that our firm of Howth, Adams & Hart and Mr. Kitching of the one part had an unforeclosed mortgage and were asserting the legal title to the property and you (Mr. O'Fiel) were also asserting some title to the property and Howth, Adams & Hart and Kitching and Miss Van Auken and you agreed how we would hold this property. And we each agreed we would forego any rights, pri-

orities or anything of that kind that we had under the deeds of trust. That was as far as the agreement between ourselves and yourself was concerned. And we took this conveyance from Wisong merely to confirm the title in us. We did not attempt in that to adjust any difference at all between Wisong and Miss Van Auken as to the balance due on the note, or any difference between Wisong and yourself as to the balance due on the note. I didn't think any of those things were settled, as far as the debt was concerned. In explanation of that, there would have been a controversy because we all saw there would have been a controversy between our firm and Mr. Van Auken and Mr. O'Fiel in regard to those rights under the foreclosure because we had the prior mortgage which was on record and had not been foreclosed and they foreclosed theirs and, of course, that would have brought up a controversy among us and it was on that account mainly that we got together and had all the parties settle those differences, and incidentally in settling that, why we determined among us what interest our firm should have, what interest you should have, and what interest Mr. Van Auken should have in that property, that protection to secure these debts, under the agreement I have just stated. In the trade there wasn't a dollar passed from Wisong, or to Miss Van Auken, or to you that I know of. None passed from me or any of our party to him that I know of."

■ It is obvious that plaintiff in error had hopes that the oil leases might develop into valuable holdings, and that he was endeavoring to arrange to purchase them; however, he admits that he never answered either of the letters from defendant in error. He said: "It was useless." He never paid the debt for which he insists the assignment was given as security. He never tendered to defendant in error any sum as a consideration for her to reconvey to him the property mentioned in the assignment. But he insists that as he was never able to repurchase the lands, and as defendant in error held same under the assignment, he was discharged from any further obligation to pay the balance due on the note. It nowhere appears that the execution of the assignment by plaintiff in error was to discharge him from the debt, to secure the payment of which the original deed of trust was given, in the event he failed to repurchase the property. We think the evidence above quoted shows to the contrary. Defendant in error had already foreclosed her deed of trust and at the trustee's sale had bought in the land and received a deed thereto from the trustee, and the amount for which the property sold, $200, was credited on the note. As between plaintiff in error and defendant in error this sale and deed divested whatever right or title plaintiff had out of him and vested same in defendant in error. The sale under the deed of trust being regular, in compliance

with the terms of the deed of trust, and not having in any manner been sought to be set aside, as between plaintiff in error and defendant in error, was final, and there was no contest between them as to same. But, as before stated, Howth, Adams & Hart, John T. Kitching, and David E. O'Fiel also had deeds of trust on this same property to secure the payment of notes given them by plaintiff in error, and they had not foreclosed, and this agreement between the deed of trust holders was simply for the purpose of a settlement among themselves of the claims they had by reason of the premises, and to avoid any contest that might arise by reason of their endeavoring to enforce any right they might have by reason of their liens—evidently it had nothing to do with any further or future right or claim plaintiff in error might have or assert to the property.

Plaintiff in error's third proposition, in substance, is that the court's finding that the assignment dated August 2, 1926, was not a mortgage or a conditional sale, was against the overwhelming weight of the evidence, and should not be permitted to stand. This assignment is overruled. The finding is amply supported by the record.

The fourth proposition asserts that defendant in error having accepted from plaintiff in error the instrument of date August 2, 1926, purporting to be an absolute assignment to the persons named of his right, title, and interest in and to the property in question, she is estopped to go behind said instrument and assert that she was the owner of the property at the time she accepted said conveyance. This assignment is overruled. It does not appear that defendant in any way doubted her ownership of the property derived through her foreclosure of her deed of trust lien and purchased at trustee's sale of the property, but to the contrary we think it quite plain that the object of the assignment of plaintiff in error was for the purpose of aiding the other parties, Howth, Adams & Hart, John T. Kitching, and David E. O'Fiel, who also had deeds of trust on said property, and who had not foreclosed same, in avoiding such a foreclosure and any contest or controversy with defendant in error in adjusting their respective claims in or to said property, and that defendant in error joined in said agreement for said purpose only. She waived no right or claim to the property in so far as plaintiff in error was concerned, but only in so far as among the said deed of trust holders was necessary to adjust among themselves their respective claims to same in an amicable way and to avoid further controversy among themselves.

The fifth proposition is overruled. It contends that by plaintiff in error executing the assignment of August 2, 1926, and the acceptance of the same by the grantees therein, if a dispute had arisen among said grantees as to their respective interests in and to said property, and said dispute having been settled by said grantees among themselves by partitioning said rights and interests, as shown in said assignment, was a novation of the original matters and contracts between plaintiff in error and said grantees, whereby said grantees took a defeasible title to the property in question in lieu of their debts against plaintiff in error, and which defeasible title was to be defeated by the payment of plaintiff in error of his debts to said parties at some future time. This contention cannot be sustained. There is nothing in the instrument that calls for any such interpretation. The weight of the evidence is to the effect that the agreement set forth in the instrument was to adjust the claims of the parties to the property among themselves only, and not an adjustment of the parties' debts against plaintiff in error. This is particularly true as to defendant in error, for the evidence clearly shows, we think, that she never entered into any such agreement as is insisted upon by plaintiff in error, either to regard the assignment of the property as a security for her debt, or to accept same in discharge of her debt.

The sixth proposition complains that the court should have found whether the instrument (the assignment) purporting on its face to be an absolute conveyance, was, in fact, such conveyance, or was only a conditional sale intended as a mortgage to secure the payment of defendant in error's debt. The court did find on this very question. He finds: "I find that the transaction referred to in defendant's pleadings was not intended as a mortgage or conditional sale of the property described and referred to in defendant's pleadings."

This holding of the court is complained of by plaintiff in error in his third proposition, supra. The finding being that said instrument was neither a mortgage, nor a conditional sale, then it must have been an absolute assignment, which on its face it purported to be.

No reversible error appearing, it follows that the judgment should be affirmed, and it is so ordered.

Affirmed.